IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| WILLIAM H. KIRKPATRICK,<br><br>Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>Defendant. | No. C13-1012<br><br>RULING ON JUDICIAL REVIEW |

## TABLE OF CONTENTS

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . 2

III. PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     A.   Kirkpatrick's Education and Employment Background . . . . . . . . . . 5
     B.   Administrative Hearing Testimony . . . . . . . . . . . . . . . . . . 5
          1.   Kirkpatrick's Testimony . . . . . . . . . . . . . . . . . . . 5
          2.   Vocational Expert's Testimony . . . . . . . . . . . . . . . . 6
     C.   Kirkpatrick's Medical History . . . . . . . . . . . . . . . . . . . 6

V.   CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . 10
     A.   ALJ's Disability Determination . . . . . . . . . . . . . . . . . . 10
     B.   Objections Raised By Claimant . . . . . . . . . . . . . . . . . . 12

VI.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

VII. ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff William H. Kirkpatrick on March 27, 2013, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Kirkpatrick asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Kirkpatrick requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On September 28, 2010, Kirkpatrick applied for both disability insurance benefits and SSI benefits. In his applications, Kirkpatrick alleged an inability to work since August 8, 2010 due to depression, anxiety, digestive problems, and ulcerative colitis. Kirkpatrick's applications were denied on November 4, 2010. On January 3, 2011, his applications were denied on reconsideration. On January 26, 2011, Kirkpatrick requested an administrative hearing before an Administrative Law Judge ("ALJ"). On March 21, 2012, Kirkpatrick appeared via video conference with his attorney before ALJ Tom L. Morris for an administrative hearing. Kirkpatrick and vocational expert Carma A. Mitchell testified at the hearing. In a decision dated May 11, 2012, the ALJ denied Kirkpatrick's claims. The ALJ determined that Kirkpatrick was not disabled and not entitled to disability insurance benefits or SSI benefits because he was functionally capable of performing work that exists in significant numbers in the national economy. Kirkpatrick appealed the ALJ's decision. On January 25, 2013, the Appeals Council denied Kirkpatrick's request for review. Consequently, the ALJ's May 11, 2012 decision was adopted as the Commissioner's final decision.

On March 27, 2013, Kirkpatrick filed this action for judicial review. The Commissioner filed an Answer on June 27, 2013. On July 29, 2013, Kirkpatrick filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing other work that exists in significant numbers in the national economy. On September 26, 2013, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On July 31, 2013, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

## III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*,

674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir.

2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Kirkpatrick's Education and Employment Background

Kirkpatrick was born in 1969. He is a high school graduate. At the hearing, he testified that he was enrolled in regular classes at school, but often performed poorly due to ADHD and difficulties with concentration and pace. Kirkpatrick stated that he was a "D" student.

The record contains a detailed earnings report for Kirkpatrick. The report covers the time period of 1985 to 2011. Prior to 1987, Kirkpatrick had minimal earnings (less than $625). From 1987 to 2009, he earned between $3,265.19 (1987) and $29,994.52 (2002). He earned $448.88 in 2010, and has no earnings since 2011.

### B. Administrative Hearing Testimony

#### 1. Kirkpatrick's Testimony

At the administrative hearing, Kirkpatrick testified that he has difficulty with concentration and focus. In order to understand and perform tasks, Kirkpatrick explained that he requires repetition. He also stated that stress and anxiety cause him significant problems. Kirkpatrick's attorney inquired of Kirkpatrick whether he suffered from suicidal thoughts. He responded that he has suicidal thoughts on a daily basis, and has attempted suicide three times in the past.

Kirkpatrick's attorney also questioned Kirkpatrick about his typical daily activities:

> Q: How many days a week are you just in your room not doing anything, not leaving the house?

A: Seven days.
Q: So you just don't go out at all?
A: No.
Q: Do you have a driver's license?
A: Yes.
Q: And do you ever go to the store or do you [do] anything like that?
A: No.
Q: So do your parents provide the food and cook for you and --
A: Yes.
Q: How about cleaning and laundry type kind of things?
A: My mom does it.

(Administrative Record at 52.) Kirkpatrick also testified that he generally sleeps until 11:00 a.m., and then watches television during the day.

### 2. *Vocational Expert's Testimony*

At the hearing, the ALJ questioned the vocational expert and provided her with a hypothetical individual who was limited to: (1) light exertional work, (2) occasional climbing, balancing, stooping, kneeling, crouching, and crawling, (3) occasional interaction with supervisors, co-workers, and the public, (4) simple, routine repetitive tasks, and (5) no close attention to detail. The vocational expert testified that under such limitations, Kirkpatrick could not perform his past relevant work, but could perform the following jobs: (1) cafeteria attendant (500 positions in Iowa and 123,000 positions in the nation), (2) housekeeper cleaner (3,000 positions in Iowa and 400,000 positions in the nation), and (3) marker (2,000 positions in Iowa and 186,000 positions in the nation).

Kirkpatrick's attorney also questioned the vocational expert. Using the identical hypothetical which was posed to the vocational expert by the ALJ, Kirkpatrick's attorney inquired whether adding the following limitations would affect an individual's ability to find competitive employment: (1) missing more than four days of work per month; and

(2) not being able to maintain attention for two-hour segments. The vocational expert testified that such an individual would be precluded from full-time competitive work.

### C. Kirkpatrick's Medical History

On October 1, 2009, Kirkpatrick met with Dr. Neelu Gill, M.D., for a psychiatric evaluation. At the evaluation, Kirkpatrick complained of depressed mood, feelings of panic, and lack of sleep. Dr. Gill noted that:

> [Kirkpatrick] reports that he has not been feeling well for some time. He admits that when he initially came for evaluation at the clinic in February of 2009 he had sought help for his depressed mood. He admits to not following through with the prescribed treatment and to going off the medications as he could not afford them. Since that time, he admits to feeling down and very low about himself, and is not sleeping well with decreased interest, energy, and concentration to work effectively. He admits that he continues to be affected by nightmares about his past sexual abuse, along with his feelings of anger, betrayal, hatred, and shame. . . . He admits that he dwells on his past abuse all of the time since he is not working and feels ashamed and angry.

(Administrative Record at 282.) Dr. Gill also noted a history of substance abuse, including regular use of marijuana and alcohol consumption in the past. Specifically, Kirkpatrick reported using marijuana once or twice per week over the past six months, and consuming four beers once or twice per month. Upon examination, Dr. Gill diagnosed Kirkpatrick with PTSD, dysthymia, cannabis dependence, and alcohol abuse. Dr. Gill concluded that:

> [Kirkpatrick] is currently unemployed and seeking help for his depressed mood. . . . Psychologically, he admits to being affected deeply by the sexual trauma by his older brother from ages eight to sixteen. He has not shared it or processed it and seems to have symptoms of trauma along with avoidance and hyper vigilance with feelings of shame and anger, which seems to affect his social and vocational functioning. . . . He needs to work on his sobriety and on his trauma, and be compliant

7

with recommendations to improve in his symptoms and functioning.

(Administrative Record at 285.) Dr. Gill recommended medication and counseling as treatment.

On October 11, 2010, Kirkpatrick met with Randi Burns, M.A., and Angela Wicks, LMHC, at the Abbe Center for Community Health in Cedar Rapids, Iowa, complaining of depression, anxiety, and feelings of paranoia. Kirkpatrick reported that his symptoms of depression and anxiety have held him back in both relationships, and finding and keeping a job. Upon examination, Burns and Wicks diagnosed Kirkpatrick with major depressive disorder, anxiety disorder, and cannabis abuse. Burns and Wicks recommended bi-weekly therapy as treatment.

On November 2, 2010, Dr. David A. Christiansen, Ph.D., reviewed Kirkpatrick's medical records and provided Disability Determination Services ("DDS") with a Psychiatric Review Technique assessment for Kirkpatrick. Dr. Christiansen diagnosed Kirkpatrick with dysthymia, PTSD, alcohol abuse in early remission, and cannabis dependence. Dr. Christiansen determined that Kirkpatrick had the following limitations: mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and no difficulties in maintaining concentration, persistence, or pace. Dr. Christiansen concluded that Kirkpatrick "appears to be capable of most work-related activities when he is motivated to do them. The medically determinable impairments are not severe."[1]

On November 4, 2010, Dr. Mary Greenfield, M.D., reviewed Kirkpatrick's medical records and provided DDS with a physical residual functional capacity ("RFC") assessment for Kirkpatrick. Dr. Greenfield determined that Kirkpatrick could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds,

---

[1] Administrative Record at 346.

(3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Greenfield found that Kirkpatrick could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Dr. Greenfield found no manipulative, visual, communicative, or environmental limitations.

On November 10, 2010, Kirkpatrick met with Dr. Alan C. Whitters, M.D., at the Abbe Center, regarding treatment of depression. Dr. Whitters noted that:

> [Kirkpatrick] has a long history of depression exacerbated by sexual abuse by his brother from the age 10 until age 17. He reports having a lot of problems dealing with his homosexuality, anxiety, and depression. He feels paranoid that people are picking on him. He feels that people are yelling at him because he is gay. He reports crying regularly. His weight has gone up about 40 pounds over the past year. He is only able to sleep with Trazodone. He has low energy, concentration and motivation. He gets frequent panic attacks.

(Administrative Record at 418.) Upon examination, Dr. Whitters diagnosed Kirkpatrick with major depressive disorder and cannabis abuse. Dr. Whitters recommended medication as treatment.

Kirkpatrick was hospitalized from November 22 to November 26, 2010, for depression and suicidal ideation. Upon examination, Kirkpatrick was diagnosed with major depression, mixed substance abuse with alcohol and marijuana, and borderline personality disorder. When he was discharged, Kirkpatrick "reported a sad mood but denied suicidal ideation."[2] Kirkpatrick was treated with medication and agreed to follow-up at a mental health facility.

---

[2] Administrative Record at 366.

On February 21, 2012, at the request of Kirkpatrick's attorney, Dr. Whitters and Randi Burns, co-treating sources, filled out a "Mental Impairment Questionnaire" for Kirkpatrick. Dr. Whitters and Burns diagnosed Kirkpatrick with major depressive disorder, generalized anxiety disorder, and PTSD. Dr. Whitters and Burns found that Kirkpatrick had no useful ability to function in the following areas: maintain attention for a two-hour segment, complete a normal workday and workweek without interruptions from psychologically based symptoms, accept instructions and respond appropriately to criticism from supervisors, understand and remember detailed instructions, carry out detailed instructions, deal with stress of semi-skilled and skilled work, interact appropriately with the general public, and use public transportation. Dr. Whitters and Burns also determined that Kirkpatrick had the following limitations: extreme restriction of activities of daily living, extreme difficulties in maintaining social functioning, and extreme difficulties in maintaining concentration, persistence, or pace. Dr. Whitters and Burns also opined that Kirkpatrick's difficulties with anxiety caused him a "complete inability to function independently outside the area of [his] home."[3] Dr. Whitters and Burns estimated that Kirkpatrick would miss more than four days per month due to his impairments or treatment for his impairments. Dr. Whitters and Burns concluded that "[i]n addition to health related issues, the experience with anxiety and panic attacks cause [Kirkpatrick] extreme functional impairment. In addition his experience with depression affects [his] motivation and concentration."[4]

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Kirkpatrick is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social

---

[3] *Id.* at 480.

[4] Administrative Record at 481.

security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Kirkpatrick had not engaged in substantial gainful activity since August 8, 2010. At the second step, the ALJ concluded from the medical evidence that Kirkpatrick has the following severe impairments: lymphocytic colitis and major depressive disorder with anxiety. At the third step, the ALJ found that Kirkpatrick did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Kirkpatrick's RFC as follows:

> [Kirkpatrick] has the residual functional capacity to perform light work . . . except for work that requires more than occasional climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling. [Kirkpatrick] is further limited to simple, routine, repetitive tasks that require no close attention to detail and that involve no more than occasional interaction with supervisors, coworkers or the public.

(Administrative Record at 20.) Also at the fourth step, the ALJ determined that Kirkpatrick was unable to perform any of his past relevant work. At the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, Kirkpatrick could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Kirkpatrick was not disabled.

## B. Objections Raised By Claimant

Kirkpatrick argues that the ALJ failed to properly evaluate the opinions of his treating doctor, Dr. Whitters, and treating counselor, Randi Burns. Specifically, Kirkpatrick argues that the ALJ failed to properly consider the opinions of Dr. Whitters and Burns because their opinions are significantly different from the ALJ's RFC assessment. Kirkpatrick maintains that the ALJ failed to give good reasons for rejecting the opinions of Dr. Whitters and Burns. Lastly, Kirkpatrick asserts that the ALJ's RFC assessment is not supported by substantial evidence as it does not fully incorporate the opinions of Dr. Whitters and Burns. Kirkpatrick concludes that this matter should be remanded for further consideration of Dr. Whitters' and Burns' opinions.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a

claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

An ALJ also has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618; *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Moreover, when considering the opinions of a treating physician, the ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent

with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'*Id..*); *Strongson v. Barnhart,* 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen,* 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue,* 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese,* 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner,* 499 F.3d at 848 (quoting *Pearsall v. Massanari,* 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P,* 1996 WL 374188 (1996).

In his decision, the ALJ addressed Dr. Whitters' and Burns' opinions[5] as follows:

> As for the opinion evidence, while Dr. Whitters assessed "extreme" limitations in all mental areas of functioning; however, I find his opinion conclusory, as it is unsupported by his treating notes or by the totality to the evidence of record. Thus, it cannot be given significant weight. Greater weight is given to the treating notes, which show overall improvement with ongoing treatment, as evidenced the doctor's own statements, as noted above.[6] Moreover, Dr. Whitters consistently assessed [Kirkpatrick's] GAF from 55-60 for the past two years, which shows no more than moderate symptoms or functional difficulties.[7] This is consistent with

---

[5] On February 21, 2012, both Dr. Whitters and Burns signed a "Mental Impairment Questionnaire" provided to them by Kirkpatrick's attorney. While the ALJ only refers to Dr. Whitters when discussing this questionnaire in his decision, the Court assumes that the ALJ's discussion of this evidence takes into consideration the opinions of both Dr. Whitters and Burns. Significantly, except for treatment notes, neither Dr. Whitters, nor Burns, offered any specific opinions outside the questionnaire provided by Kirkpatrick's attorney.

[6] Earlier in his decision, the ALJ noted provided that "Dr. Whitter [sic] noted 'therapy and medication management had been somewhat effective in managing the claimant's symptoms.'" Administrative Record at 21.

[7] From October 2010 to December 2010, Kirkpatrick met with Dr. Whitters and Burns approximately 13 times. In each of those meetings, Kirkpatrick was assessed with a GAF score of 55-60. See Administrative Record at 418-447; 482-84. From January 2011 to December 2011, Kirkpatrick was assessed with a GAF score of 55 on 11 occasions. See Administrative Record at 491, 498, 504, 508, 511, 515, 518, 521, 525, 541, 544. He was assessed with a GAF score of 50 on 7 occasions during the same time period. See Administrative Record at 488, 494, 501, 528, 532, 534, 538. Interestingly, 4 of the 50 scores occurred between January 19, 2011 and February 8, 2011. Then from February 24, 2011 to October 3, 2011, Kirkpatrick's GAF score was consistently 55. In January and February 2012, Kirkpatrick's GAF scores were 50 on January 9, and 55 on January 31 and February 13. See Administrative Record at 550, 554, 557. Therefore, in all of his appointments with Dr. Whitters and Burns, Kirkpatrick was assessed with a GAF score between 55-60 on 26 occasions, and a GAF score of 50 on 8 occasions with 4 of

(continued...)

>     [Kirkpatrick's] wide range of [activities of daily living], which
>     tends to show greater functioning than alleged.

(Administrative Record at 22.)

Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Whitters and Burns. The Court also finds that the ALJ provided "good reasons" for rejecting Dr. Whitters' and Burns' opinions. *See* 20 C.F.R. § 404.1527(d)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967; *see also Myers v. Colvin*, 721 F.3d 521, 525 (8th Cir. 2013) (providing that consideration of GAF scores is acceptable for an ALJ's consideration of whether a treating source's opinion is consistent with his or her treatment records); *Halverson v. Astrue*, 600 F.3d 922, 930-31 (8th Cir. 2010) (providing that an ALJ may use GAF scores in determining a claimant's level of functioning); *Wildman*, 596 F.3d at 964 (providing that a checklist questionnaire, generality in answering the questionnaire, and lack of support for a treating source's assessment in a questionnaire limit the evidentiary value of such questionnaires). Furthermore, the Court determines that the ALJ properly considered Kirkpatrick's medical records, observations of treating and non-treating physicians, and Kirkpatrick's own description of his limitations in making his RFC assessment for Kirkpatrick.[8] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618.

---

[7](...continued)
those occasions occurring in a three-week period in early 2011. Accordingly, the Court finds that the ALJ's assessment that Dr. Whitters, and presumably Burns as well, "consistently assessed [Kirkpatrick's] GAF from 55-60" to be correct and supported by substantial evidence. *See Guilliams*, 393 F.3d at 801 ("[E]ven if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole.").

[8] *See* Administrative Record at 18-22 (providing a thorough and detailed discussion of the relevant evidence for making a proper RFC determination).

Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## VI. CONCLUSION

The Court finds that the ALJ properly considered and addressed the medical evidence and opinions in the record, including the opinions of Dr. Whitters and Burns. The Court also finds that the ALJ properly considered the medical evidence as a whole, and made a proper RFC determination based on a fully and fairly developed record. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 3rd day of January, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA